IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL D. SMOKOWICZ | : | CIVIL ACTION |
| | : | NO. 16-5891 |
| v. | : | |
| | : | |
| GRAPHIC PACKAGING | : | |
| INTERNATIONAL, INC. et al. | : | |

O'NEILL, J.  May 30, 2017

## MEMORANDUM

In his Amended Complaint, plaintiff Michael D. Smokowicz brings a claim for breach of a Collective Bargaining Agreement against his former employer, defendant Graphic Packaging International, Inc., (Count I), and his former union, defendant AFL-CIO, CLC Local Union # 807[1] (Count II), for failure to allow plaintiff to grieve his May 11, 2016 termination. He also brings a separate claim against Graphic Packaging for breach of his Last Chance Agreement (Count III). Previously, I granted defendants' motion to dismiss plaintiff's complaint with leave to amend. Dkt. No. 19. Plaintiff filed his amended complaint thereafter, alleging the same claims but additional facts. Dkt. No. 22. Defendants again filed motions to dismiss, Dkt. Nos. 23 (Union) & 24 (Graphic Packaging), plaintiff responded, Dkt. Nos. 27 & 28, and Graphic Packaging replied. Dkt. No. 29.

I find that, while plaintiff still does not state a claim for breach of the Last Chance Agreement, he now states a claim for breach of the Collective Bargaining Agreement. I will therefore grant Graphic Packaging's motion with respect to Count III and deny the motions with respect to the other claims.

---

[1]  The party's full name is United Steel, Paper, Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Services Workers International Union (USO) AFL-CIO, CLC Local Union # 807.

## BACKGROUND

Plaintiff alleges that, beginning in 2013, the Union began treating him in an arbitrary and unfair manner, culminating in the Union's decision not to protect his rights against his employer, Graphic Packaging, after Graphic Packaging fired him without cause in May 2016.

The first incident took place in March 2013. Union official Scott Bender "verbally and physically threatened" plaintiff, and in response, "in order to protect his dignity," plaintiff "rolled a coating dolly in the general direction of Bender, but not in any way that could cause harm to him." Am. Compl. ¶¶ 11(a)–(b). Plaintiff "requested that Union pursue a grievance" against Graphic Packaging,[2] but the "Union wrongfully refused to do so, because of its hostile attitude toward plaintiff and its preferential treatment of its own official." Id. ¶¶ 11(d), (e).

As a result of the confrontation between plaintiff and Bender, Graphic Packaging accused plaintiff of workplace harassment and violence and threatened to fire him. Id. ¶¶ 11(c), (d). The Union and Graphic Packaging then negotiated the Last Chance Agreement (LCA), pursuant to which plaintiff returned to his job under certain conditions, including no back pay, loss of seniority and completion of a mandated counseling program. Id., Ex. B. The LCA also provided that plaintiff "will be terminated for his first failure to meet the any of terms [sic] or conditions outlined below" and that "[t]his agreement and any subsequent termination resulting from it will be non-grievable." Id. Finally, the agreement stated:

> Upon reinstatement, and <u>for the remainder of his employment at the Valley Forge Plant</u>, Mr. Smokowicz must perform all aspects of his job satisfactorily and meet all established standards of conduct. Unsatisfactory job performance includes but is not limited to non-compliance with company plant rules, policies or

---

[2]  It is not clear from the amended complaint if the requested grievance was about the threatened termination, Scott Bender's threats, or both.

> procedures, lack of productivity, unsafe acts, insubordination, negligent reckless behavior, misconduct, etc.
>
> . . . . This **Last Chance Agreement is non-precedent setting, will not be referenced in future discussion between the Parties, and is non-grievable.**

Id. (emphasis in original).

Plaintiff alleges that the Union did not adequately defend his interests when it negotiated the LCA because of its hostility toward him. The Union and Graphic Packaging told plaintiff he had to sign the LCA in order to keep his job and "lied to plaintiff and told him the LCA had to be in force for the duration of his employment." Id. ¶ 11(f), (i). He avers that the LCA, which was to last for the rest of plaintiff's employment at Graphic Packaging (an indefinite amount of time), violated the Union's own "policy and custom that disciplinary periods, or 'rollbacks' were limited to a period of two years." Id. ¶¶ 11(h), (g), Ex. B.

Several other allegedly discriminatory incidents followed in the next three years, which, plaintiff argues, show the Union's animosity toward him. First, in the fall of 2013, Graphic Packaging gave a junior employee instead of plaintiff the hours that plaintiff had requested, even though plaintiff had earned preferential status. Id. ¶¶ 10(a)–(c). When plaintiff filed a grievance, the Union refused to pursue it. Id. ¶¶ 10(d)–(e).

Then, in the spring of 2015, Graphic Packaging again "allowed [another, less qualified employee] to move into day work and take plaintiff's position." Id. ¶ 12(e).[3] Plaintiff asked a Union steward for advice, but was told there was nothing the Union could do for him. Id. ¶ 12(f).

---

[3] It is not clear whether this is a position for which plaintiff was merely in training, or a position for which he had applied.

Finally, on May 11, 2016, Graphic Packaging summoned plaintiff to the personnel office and told him he was being fired for posting the wrong shipping tag on a pallet of products. Id. ¶ 13(c), (d). Plaintiff alleges that this stated reason was false; plaintiff did not mislabel the pallet or commit any error. Id. ¶ 13(e). He further alleges that the Union knew that plaintiff had not made an error, yet when he asked the Union to protect his rights, the Union refused to do so. Id. ¶¶ 14–15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). A well-pleaded complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 556. However, a complaint must provide "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.

## DISCUSSION

### I.  Counts I and II:  Breach of Collective Bargaining Agreement

Plaintiff has alleged facts in his amended complaint that, taken as true, show that the Union's actions were arbitrary, discriminatory or in bad faith and that Graphic Packaging fired him without cause. He has therefore stated a claim for breach of the Collective Bargaining Agreement (CBA) against both Graphic Packaging and the Union. Because I discussed the relevant law more fully in my February 27, 2017 Order, Dkt. No. 18, I include an abbreviated discussion here.

As before, plaintiff alleges Graphic Packaging fired him without cause in breach of the CBA; however, in a claim for breach of a collective bargaining agreement like the one here, a plaintiff "must not only show that [his] discharge was contrary to the [CBA] but must also" demonstrate "breach of duty by the Union" pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 et seq. DelCostello v. Teamsters, 462 U.S. 151, 164–65 (1983). Such claims are "hybrid § 301/fair representation" claims. Id.

A union breaches its duty of fair representation if its actions are "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967); DelCostello, 462 U.S. at 164; see also Maksin v. USW, Local 2227, 136 F. Supp. 2d 375, 382 (W.D. Pa. 2000) ("This

5

duty of fair representation includes an obligation to serve the interests of the members without hostility or discrimination, to exercise its discretion in good faith, and to avoid arbitrary conduct."). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991) (internal quotation marks omitted). A union's actions are in bad faith where "the union and its representatives harbored animosity towards the employee; and . . . that animosity manifested itself as a material factor in the union's handling of the employee's grievance." Sterrett v. Giant Eagle, Inc., No. 14-235, 2015 U.S. Dist. LEXIS 23304, *21–23 (W.D. Pa. Jan. 22, 2015).

Plaintiff's amended complaint alleges sufficient facts showing that the Union harbored animosity toward him and that this manifested itself as a material factor in the Union's refusal to protect his rights upon his termination in May 2016. To show that the Union harbored animosity, plaintiff avers the Union refused to bargain with Graphic Packaging to limit the duration of his LCA after the March 2013 dispute and that it thereafter twice refused to protect his rights to obtain more favorable work. Plaintiff alleges that, against this background, the Union refused to pursue plaintiff's grievance even though it knew Graphic Packaging's stated reason for terminating plaintiff was fabricated.[4] Accepting all these allegations as true, I find that plaintiff's amended complaint includes sufficient facts to show that the Union acted in bad faith when it refused to pursue his grievance over his termination.[5]

---

[4]  Defendants argue that the facts plaintiff alleges are "time-barred." Dkt. No. 24 (Graphic Packaging Br). at p. 5–7; Dkt. No. 23 (Union Br.) at p. 8. But these facts are not the basis of plaintiff's claim; they merely provide background to show that, in May 2016 when the Union refused to pursue plaintiff's grievance, it was motivated by animosity toward plaintiff.

[5]  Graphic Packaging cites Maksin v. USW, Local 2227, 136 F. Supp. 2d at 382, in arguing that plaintiff's allegations of a particular union representative's hostility are not sufficient to show breach of the union's duty of fair representation. Dkt. No. 29 at p. 4. But Maksin is a

6

Defendants argue that plaintiff has not stated a claim because his allegations show that the Union acted based on a good-faith interpretation of the LCA's provision stating that "[t]his Last Chance Agreement is . . . non-grievable." Am. Compl. Ex. B. Defendants argue that plaintiff's allegations make clear that the Union reasonably interpreted the LCA as superseding the CBA's arbitration provision[6] and barring plaintiff from disputing the grounds for his termination. But this argument does not show that plaintiff has failed to state a claim. While it is possible that the Union interpreted the LCA in this way, plaintiff's amended complaint includes facts that show that another, unlawful motivation may have been at work in the Union's rejection of plaintiff's grievance.

Moreover, the LCA's provision does not itself preclude plaintiff's claim because it is ambiguous with respect to whether it bars plaintiff from grieving the determination that he violated the terms of his continued employment. Where a contract is ambiguous, a court must look at relevant extrinsic evidence. Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385, 202 (Pa. 1986). Therefore, a claim for breach of contract should not be dismissed if a contract is ambiguous with respect to that claim. Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (explaining that the court will interpret the contract as a matter of law "[w]here the written terms of the contract are not ambiguous and can only be read one way").

---

decision on a motion for summary judgment in which the court weighed the sufficiency of the evidence presented. Maksin, 136 F. Supp. 2d at 382. As in Maksin, plaintiff will ultimately have to present evidence that particular union members' hostility "affected the manner in which his grievance was handled." Id. At this stage, however, his allegation that the Union refused to pursue his grievance despite its knowledge that there were no grounds for his termination, along with his other allegations of hostile treatment, are sufficient.

[6] The CBA states: "In the event that a grievance based upon the interpretation, application or compliance with the terms of this Agreement shall not have been satisfactorily settled, the Union may submit the matter to the American Arbitration Association or FMCS . . . ." Am. Compl. Ex. A (CBA) at p. 17.

7

Here, the LCA is ambiguous with respect to plaintiff's right to grieve Graphic Packaging's finding that he did not perform his job satisfactorily.

The cases the parties cite to guide my interpretation of the LCA each consider two different provisions in last chance agreements, both of which also differ materially from the provision at issue here. First, plaintiff cites United Steelworkers of America, AFL-CIO v. Lukens Steel Co., in which the court interpreted an LCA that bifurcated the determination about whether the employee violated the LCA and the determination about the appropriate sanction for a violation. 969 F.2d 1468, 1475–76 (3d Cir. 1992). The LCA provided that the employee "will be afforded an opportunity to plead his case before the Disciplinary Committee" and that "neither [the employee] nor the Union shall have recourse through the arbitration/grievance procedure [provided in the CBA] to protest the suspension or disposition invoked by the Disciplinary Committee." 969 F.2d at 1475–76. The Court of Appeals concluded that the LCA "clearly preclude[d] an employee who has violated the Agreement from arbitrating the penalty imposed by the Disciplinary Committee," but that "the Committee's power to determine the 'disposition' of an employee's case [did] not necessarily encompass the threshold issue of ascertaining whether the employee has violated the Agreement. Rather . . . it could merely refer to the power to choose the appropriate penalty once the arbitrator has found a violation." Id. at 1476. The court noted that it is common for LCAs to bifurcate the employee's rights, allowing grievance proceedings with respect to the existence of a violation but revoking them with respect to the appropriate punishment for the violation. Id. at 1477 (listing cases from the Sixth, Seventh, and Eighth Circuits); see also Pace Int'l Union v. Vacumet Paper Metalizing Corp., 91 F. App'x 380, 383 (6th Cir. 2004) (finding that an LCA bifurcated the decision of guilt from the decision of the appropriate response where the LCA provided that "the Employee and/or union

8

may not challenge the discharge in the grievance or arbitration procedure"); Degrandis v. Children's Hosp. Boston, 806 F.3d 13, 17 n.4 (1st Cir. 2015) (collecting cases describing such LCAs from the Courts of Appeals for the Fourth, Sixth and Seventh Circuits).[7]

Defendants, on the other hand, cite Sterett v. Giant Eagle, a case in which the LCA precluded the employee from grieving either a finding of violation or the imposition of a sanction. No. 14-235, 2015 U.S. Dist. LEXIS 23304, at *11–14 (W.D. Pa. Jan. 22, 2015). The court in Sterett explained that "the LCA specifically states that, in the event that Plaintiff is determined by the Company to have committed any dishonest act, the Company will have the right to discharge Plaintiff." Id. (emphasis in original). The court emphasized that, unlike the LCA in Lukens Steel (the case plaintiff cites here), the LCA in Sterrett "does state who is to decide the threshold issue of guilt, namely, [the employer]." Id. at *14. Moreover, in Sterrett, the LCA prevented the employee from filing "any NLRB charge, grievance, lawsuit, or any other legal or administrative proceeding against the Company in connection with such discharge." Id. at *9; cf. Degrandis v. Children's Hosp. Boston, 806 F.3d 13, 17–18 (1st Cir. 2015) (rejecting the defendant's exhaustion argument and allowing lawsuit where an LCA prohibited employee from grieving or arbitrating his termination, but not from filing a lawsuit).

---

[7] The cases the Union cites interpret LCAs that preclude the arbitrator from questioning the sanction imposed, rather than the fact of a violation. Dkt. No. 23 at 8–9, citing Boise Cascase Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE) Local 7, 309 F.3d 1075, 1085–86 (8th Cir. 2002) (considering the employee's challenge that her termination was an overly harsh reaction to her drunkenness at work, given that she was in a rehabilitation program, even under an LCA); Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440–41 (8th Cir. 1992) (holding that the arbitrator could not craft his own sanction after finding that a violation of the LCA had occurred, but had to terminate the employee per the LCA's terms); Tootsie Roll Indus., Inc. v. Local Union No. 1, Baker, Confectionery and Tobacco Workers' Int'l Union, 823 F.2d 81, 84 (7th Cir. 1987) ("Because we agree . . . that [the employee] violated the attendance requirements of the agreement, the waiver clause of the agreement renders [the employee's] grievance not arbitrable.").

Here, the LCA's language is unlike either that in <u>Lukens Steel</u> or <u>Sterrett</u>. The LCA merely states that it is "non-grievable." It does not say which aspects of the LCA are non-grievable or who is to decide the threshold issue of guilt. It does not prohibit the employee from filing a lawsuit. It could be read, in accordance with <u>Lukens Steel</u>, as prohibiting the plaintiff from grieving only Graphic Packaging's response to plaintiff's supposed violation of its terms, but allowing arbitration with respect to whether he in fact violated the terms. Or, it could be read to provide that a finding that a violation occurred cannot itself be grieved, in accordance with <u>Sterrett</u>. Given this ambiguity, plaintiff has stated a plausible claim for breach of contract.[8]

## II. Count III: Breach of the Last Chance Agreement

For the same reasons described in my February 27, 2017 Order, plaintiff has not stated a claim for breach of the LCA. As I explained then, neither the alleged terms of the LCA nor the alleged circumstances surrounding the agreement's creation suggest that the LCA imposed a duty on Graphic Packaging to continue to employ plaintiff for a specific amount of time, and so that agreement does not overcome Pennsylvania's at-will presumption. <u>Greene v. Oliver Realty, Inc.</u>, 363 Pa. Super. 534, 553 (Pa. Super. Ct. 1987) ("[A]n employment contract is presumptively terminable at will."). As before, plaintiff's allegations only show that, to the extent Graphic

---

[8] The Union argues plaintiff, in alleging that the "supposed cause for his termination was fabricated by Employer, and Union knew it," Am. Compl. ¶ 15, has "brought his Amended Complaint within the purview of the Federal Rule of Civil Procedure 9(b)" and failed to plead fraud "with particularity" as required by that rule. Dkt. No. 23 at 7. But plaintiff need only plead bad faith, not fraud, to state a claim under § 301. Plaintiff has adequately pleaded the circumstances constituting the Union's alleged misconduct. Neither of the cases the Union cites show that plaintiff here has failed to state a claim. See <u>DiGenova v. Baker</u>, No. 02-98, 2002 U.S. Dist. LEXIS 12137 at *2 (E.D. Pa. Apr. 11, 2002) (finding that plaintiff's complaint, which was "difficult to decipher," did not allege specific facts to support his claims that union officials defrauded him); <u>Turley v. Hall's Motor Transit Co.</u>, 296 F. Supp. 1183, 1187 (M.D. Pa. 1969) (finding that the allegation that the union "made fraudulent representations that plaintiffs had no standing to file a grievance" left open significant questions about the meaning of this allegation).

10

Packaging owed him a duty not to fire him without just cause, such duty was imposed under the CBA, not the LCA.  See Compl. Ex. B (CBA) at 18 (explaining that Graphic Packaging reserved the right to discharge employees "because of lack of work" or for other reasons that are "justifiable").  Therefore, I will dismiss Count III with prejudice, as amendment would be futile.

An appropriate Order follows.