IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL D. SMOKOWICZ, <br><br> Plaintiff, <br><br> v. <br><br> GRAPHIC PACKAGING INTERNATIONAL, INC., et al., <br><br> Defendants. | CIVIL ACTION <br> NO. 16-5891 |

## OPINION

**Slomsky, J.**                                                                                                      **June 5, 2018**

### I. INTRODUCTION

This case involves two claims. Plaintiff Michael D. Smokowicz brings the first claim against his former employer, Graphic Packaging International, Inc., for breach of a Collective Bargaining Agreement ("CBA") in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[1] Plaintiff brings the second claim against his union, United Steel, Paper, Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) AFL-CIO, CLC Local Union #807 ("Union"), for failing to fulfill its

---

[1] 29 U.S.C. § 185(a) provides as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

1

duty of providing fair representation for a member. This action is inferred from the Union's exclusive authority under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).[2]

In Count I, Plaintiff alleges that Defendant Graphic Packaging breached the CBA by terminating his employment and by not allowing him to grieve his termination. In Count II, Plaintiff contends that Defendant Union breached its duty of fair representation by refusing to grieve or arbitrate his termination.[3] Together, these two claims are referred to as a "hybrid § 301/fair representation claim" because a plaintiff must establish both claims before he is entitled to relief. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983).

Defendants deny the allegations and have moved for summary judgment. (Doc. Nos. 51, 52.) Plaintiff has filed Responses in Opposition (Doc. Nos. 59, 60), and Defendants have filed Replies (Doc. Nos. 61, 62). For reasons that follow, the Court will grant the Motions for Summary Judgment.[4]

---

[2] 29 U.S.C. § 159(a) provides:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: *Provided*, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: *Provided further*, That the bargaining representative has been given opportunity to be present at such adjustment.

[3] In Count III, the Amended Complaint also includes a claim for breach of contract against Graphic Packaging. (Doc. No. 22 at 8-9.) In an Opinion and Order dated May 30, 2017, the Honorable Thomas N. O'Neill of this Court dismissed Count III pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 30 at 10-11.)

[4] In deciding the Motions for Summary Judgment, the Court has considered the Amended Complaint (Doc. No. 22); Judge O'Neill's May 30, 2017 Opinion and Order (Doc. Nos. 30, 31); Defendant Union's Motion for Summary Judgment (Doc. No. 51); Defendant Graphic

## II. BACKGROUND

### A. Factual Background[5]

From 1993 to May 11, 2016, Graphic Packaging employed Plaintiff Michael D. Smokowicz at its Valley Forge, Pennsylvania plant. (Doc. No. 52-1 ¶ 1.) Throughout his employment, Plaintiff was a member of the Union. (Doc. No. 51-7 ¶ 4.) As a member of the Union, Plaintiff was subject to a CBA. (Doc. No. 52-1 ¶ 3.) The CBA provides in relevant part:

> **Section 1** [Graphic Packaging] reserves the full right to discharge, transfer, suspend, promote, demote or relieve employees from duties because of lack of work or other justifiable reasons. Progressive discipline is intended to be corrective in nature and not punitive. However, it is understood and agreed that the above are subject to the grievance procedure herein.
>
> **Section 2** If an employee is discharged, the employee or the Union shall, upon request, receive in writing, full and complete reasons therefore, and the steward shall be notified. If the employee involved desires to file a grievance, it must be submitted within five (5) days from the time of discharge. . . .

(Doc. No. 52-3 at 18-19, art. XVII.)

On March 5, 2013, Graphic Packaging fired Plaintiff after he pushed a coating dolly at a co-worker in violation of its Anti-Harassment and Violence in the Workplace policies. (Doc. No. 52-1 ¶ 4.) Plaintiff testified that he pushed the dolly because his co-worker provoked him. (Doc. No. 52-3 at 120:9-18.) Following his termination, the Union negotiated a Last Chance

---

Packaging's Motion for Summary Judgment (Doc. No. 52); Plaintiff's Responses in Opposition (Doc. Nos. 59, 60); and Defendants' Reply Briefs (Doc. Nos. 61, 62).

[5] The following facts are taken from Defendants' statements of undisputed facts (Doc. Nos. 51-7, 52-1), Plaintiff's Answers to the statements of undisputed facts (Doc. Nos. 59, 60), and Exhibits filed by Defendants.

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). As Plaintiff is the nonmoving party, the Court will view the facts in the light most favorable to him.

Agreement ("LCA") on Plaintiff's behalf that restored him to his former position without back pay and required him to attend a counseling program. (Doc. No. 52-1 ¶ 7; Doc. No. 51-3 at 2.)

The LCA provides that Plaintiff "will be terminated for his first failure to meet the any of terms [sic] or conditions outlined below" and that "[t]his agreement and any subsequent termination resulting from it will be non-grievable." (Doc. No. 51-3 at 2.) It further states:

> Upon reinstatement, and <u>for the remainder of his employment at the Valley Forge Plant</u>, [Plaintiff] must perform all aspects of his job satisfactorily and meet all established standards of conduct. Unsatisfactory job performance includes but is not limited to non-compliance with company plant rules, policies or procedures, lack of productivity, unsafe acts, insubordination, negligent reckless behavior, misconduct, etc.
>
> . . . This Last Chance Agreement is non-precedent setting, will not be referenced in future discussions between the Parties, and is non-grievable.

(<u>Id.</u> (emphasis in original).) On March 22, 2013, the LCA was signed by Plaintiff, the Union's President, the Plant Manager, and the Human Resources Manager. (<u>Id.</u>) Plaintiff and the Union were bound by the LCA's terms. (Doc. No. 51-7 ¶ 13.)

In April 2016, Graphic Packaging was notified that a pallet of Hershey Reese's Peanut Butter King Size Cups had been mislabeled with the incorrect batch tag as eight-ounce Kraft Cream Cheese. (Doc. No. 51-6 at 2.) The incorrect batch tag was generated by a computer that Plaintiff had signed on to. (Doc. No. 51-2 at 138:20-24, 145:2-5.) In his deposition, Plaintiff agreed that the mislabeling was a serious offense that created a major risk of recall and infringed on product safety, but denied he was responsible for the mislabeling. (<u>Id.</u> at 145:2-21.)

In May 2016, Union President Richard Salamone and Union Vice President Matthew Viscuso met with Brian Smith, Graphic Packaging's Head of Human Resources, to discuss the mislabeling incident. (Doc. No. 51-6 at 7 ¶ 7.) Smith informed Salamone and Viscuso that Graphic Packaging intended to terminate Plaintiff for the mislabeling incident. (<u>Id.</u>) Smith also informed them that the Union could not represent Plaintiff for a grievance regarding the

4

termination because the terms of the LCA rendered his termination non-grievable. (Id. ¶ 8.) Thereafter, Salamone and Smith again met to discuss Plaintiff's termination, this time with Walter Judon, Staff Representative of the International Union, present. (Id. ¶ 10.) Salamone and Judon asked Smith to offer Plaintiff another LCA, but Smith refused to do so. (Id.)

On May 11, 2016, Plaintiff attended a meeting with Smith and Zachary Steinly, Plaintiff's supervisor, to discuss his termination. (Doc. No. 51-7 ¶ 17.) At the meeting, Plaintiff was represented by Salamone and Viscuso. (Id.) At that time, Plaintiff did not tell Graphic Packaging that he was not responsible for the mislabeled batch tag because he avers that he did not have the opportunity to do so. (Doc. No. 52-3 at 149:24-150:5.) Plaintiff was fired from Graphic Packaging that same day. (Doc. No. 52-1 ¶ 16.)

On June 20, 2016, Plaintiff wrote to Salamone requesting an update on grieving his termination. (Id. ¶ 17.) Ten days later, Judon informed Plaintiff by letter that given all available facts, the International Union believed that it "could not prevail in arbitration and that the arbitrator would rule in favor of [Graphic Packaging]." (Doc. No. 51-6 at 4.) The letter stated that the International Union "cannot proceed any further with [a] grievance." (Id.) In his sworn affidavit, Salamone states: "Because the terms of [the LCA] clearly state[] that any termination would not be grievable and [Plaintiff] was in violation of his [LCA], the Union concluded that it would be fruitless to grieve or arbitrate his termination." (Id. at 8 ¶ 14.) Neither Plaintiff nor the Union filed a grievance related to his termination. (Doc. No. 51-2 at 140:14-20.)

### B. Procedural History

On November 14, 2016, Plaintiff filed a Complaint against Graphic Packaging and the Union, alleging breach of the CBA against both Defendants (Counts I and II) and breach of contract against Graphic Packaging (Count III). (Doc. No. 1.) Defendants moved to dismiss the Complaint. (Doc. Nos. 10, 15.) In an Opinion and Order dated February 27, 2017, the

Honorable Thomas N. O'Neill of this Court dismissed the Complaint with leave to amend. (Doc. Nos. 18, 19.) On March 17, 2017, Plaintiff filed an Amended Complaint. (Doc. No. 22.) Defendants moved to dismiss the Amended Complaint. (Doc. Nos. 23, 24.) On May 30, 2017, Judge O'Neill denied the Motions to Dismiss the breach of the CBA claims alleged in Counts I and II and as noted, granted the Motion to Dismiss the breach of contract claim alleged in Count III. (Doc. Nos. 30, 31.)

On November 27, 2017, the case was reassigned to this Court for all further proceedings. (Doc. No. 40.) The parties proceeded to discovery. After discovery concluded, Defendants filed the Motions for Summary Judgment (Doc. Nos. 51, 52), which are now ripe for disposition.

### III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth

specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (alteration in original) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009)). The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247–249. Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. Id. at 250.

The nonmoving party may not resist a properly filed motion for summary judgment by relying solely on the unsupported conclusory allegations contained in pleadings, but rather must go beyond the pleadings and affidavits and designate specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. In ruling on Defendant's Motion for Summary Judgment, a mere scintilla of evidence in support of Plaintiff's position is insufficient. Id. at 252. Enough evidence must exist such that a jury could reasonably find for Plaintiff. Id. Plaintiff cannot merely rely upon assertions or speculation. Chambers, 587 F.3d at 193 ("Significantly, at summary judgment a non-moving party may not rest on mere allegations." (citations omitted)). If the evidence is merely colorable or is not sufficiently probative, summary judgment may be granted. Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 771 (3d Cir. 2009).

## IV. ANALYSIS

As noted earlier, in Counts I and II of the Amended Complaint, Plaintiff brings a hybrid claim for breach of the CBA by his employer, Graphic Packaging, in violation of § 301 of the LMRA, 29 U.S.C. § 185, and by his Union for failing to fulfill its duty of providing fair representation for a member, which is inferred from a union's exclusive authority under the NLRA, 29 U.S.C. § 159(a). Defendants argue that they are entitled to summary judgment because Plaintiff has failed to show that Graphic Packaging breached the CBA and that the Union breached its duty of fair representation, both of which are necessary to succeed on a hybrid § 301/fair representation claim against either Defendant.[6] (Doc. No. 51-1 at 10; Doc. No. 52-2 at 3.)

To successfully establish a hybrid § 301/fair representation claim against either an employer or a union, a plaintiff must show that (1) the employer breached the CBA when it

---

[6] In their Reply Briefs, Defendants argue that the Court should strike Plaintiff's Responses to the Motions for Summary Judgment because they were untimely filed. (Doc. Nos. 61, 62.) On February 5, 2018, Defendants filed Motions for Summary Judgment. (Doc. Nos. 51, 52.) Plaintiff had until February 20, 2018 to file Responses to the Motions. Local R. Civ. P. 7.1(c). On February 21, 2018, Defendants filed Praecipes to Enter Judgment Pursuant to Federal Rule of Civil Procedure 56(e)(2), arguing that Plaintiff's failure to respond warranted finding the material facts undisputed. (Doc. Nos. 54, 55.) On March 15, 2018, the Court entered an Order extending the time for Plaintiff to respond to March 26, 2018. (Doc. No. 58.) Because Plaintiff filed Responses on March 27, 2018, after the deadline had lapsed, Defendants argue that his Responses should be stricken as untimely.

Rule 56(e)(1) provides: "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(e)(1). A court should not grant a party's motion for summary judgment without examining the merits of the case. See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175-76 (3d Cir. 1990); see also Mota v. Aaron's Sales & Lease Ownership, Civ. A. No. 11-4298, 2012 WL 3815332, at *2 n.4 (E.D. Pa. Sept. 4, 2012) (denying defendant's request to strike plaintiff's response to the motion for summary judgment as untimely, and stating that a court must examine the merits of a case).

Here, the Court will exercise its discretion and consider Plaintiff's Responses in Opposition, though untimely filed. As discussed below, however, the Court will grant the Motions for Summary Judgment on the merits.

terminated him, and (2) the union breached its duty of fair representation when it declined to file a grievance of the termination. See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983) ("To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." (alteration and omission in original) (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 66-67 (1981) (Stewart, J., concurring in the judgment))). Even if a plaintiff only sues either the employer or the union, the required showing is the same. Id. at 165. As such, the suit is "not a straightforward breach of contract suit under § 301 . . . but a hybrid § 301/fair representation claim, amounting to 'a direct challenge to the private settlement of disputes under [the collective-bargaining agreement].'" Id. (alteration in original) (quoting Mitchell, 451 U.S. at 66 (Stewart, J., concurring in the judgment)). A plaintiff must establish both elements of the hybrid § 301/fair representation claim before he is entitled to relief under § 301. Findley v. Jones Motor Freight, 639 F.2d 953, 957-58 (3d Cir. 1981).

The best way to approach the Motions for Summary Judgment in this case is to start with the arguments by Plaintiff in opposition to summary judgment. Plaintiff recognizes that if he breached the LCA, Graphic Packaging would be entitled to terminate him. Plaintiff denies, however, that he breached the LCA and argues that Graphic Packaging breached the CBA because his conduct did not constitute grounds for termination and because Graphic Packaging improperly refused to allow Plaintiff or the Union to grieve his termination. (Doc. No. 22 ¶¶ 21, 24.) Plaintiff does not agree that he has no remedy under the CBA. He contends that the CBA contains a grievance provision that allows him to arbitrate his termination and that this provision is not superseded by the terms of the LCA. (Doc. No. 59 at 7.) Defendants argue that Plaintiff's termination for mislabeling was both justified and non-grievable under the LCA. (Doc. No. 51-1

at 10-11; Doc. No. 52-2 at 4-5.) As such, Defendants argue that Graphic Packaging did not breach the CBA under either theory.

Even if Plaintiff is correct, however, he still must show that the Union breached its duty of fair representation for his hybrid § 301/fair representation claim to survive summary judgment. In this case, as discussed below, in viewing the evidence in the light most favorable to him as the nonmoving party, he fails to show that the Union breached its duty of fair representation and for that reason Defendants are entitled to summary judgment. Accordingly, the Court need not reach the issue of whether Graphic Packaging breached the CBA and only will discuss the duty of fair representation claim against the Union.

Here, Plaintiff has failed to show that the Union breached its duty of fair representation because he has not put forth evidence showing that the Union's actions were arbitrary, discriminatory, or in bad faith. See Vaca v. Sipes, 386 U.S. 171, 190 (1967) (citations omitted). Plaintiff contends that following the mislabeling incident, the Union arbitrarily and in bad faith failed to protect his rights under the CBA by refusing to grieve or arbitrate his termination. (Doc. No. 22 ¶¶ 14-18, 26-30.) Defendants submit that they are entitled to summary judgment because Plaintiff has failed to put forth evidence supporting his allegation that the Union acted in an arbitrary, discriminatory, or bad faith manner. (Doc. No. 51-1 at 12-13; Doc. No. 52-2 at 7.) The Court agrees with Defendants.

As the exclusive bargaining agent for its members, a union has "a statutory duty fairly to represent" its members in collective bargaining and in "enforcement of the resulting collective bargaining agreement." Vaca, 386 U.S. at 177 (citations omitted). This duty "requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Chauffers,

Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 563 (1990) (quoting Vaca, 386 U.S. at 177). Thus, the union is required to pursue a member's grievance "in a manner consistent with the principles of fair representation." Id.

As stated previously, a union has breached its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190 (citations omitted). A union's conduct is "arbitrary only when it is irrational, when it is without a rational basis or explanation." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998) (citing Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78-81 (1991)). When a union member has an alleged grievance against his employer, the "union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." Riley v. Letter Carriers Local No. 380, 668 F.2d 224, 228 (3d Cir. 1981) (quoting Vaca, 386 U.S. at 191). Under this standard, "(m)ere ineptitude or negligence in the presentation of a grievance by a union" and "[t]he fact that trained counsel would have avoided the error or pursued a different strategy [are] not enough." Id. (first alteration in original) (quoting Findley, 639 F.2d at 960 n.2).

Whether a union's conduct is in bad faith "depends upon the circumstances." Findley, 639 F.2d at 959. To justify a finding of bad faith, "[m]ore than unsupported allegations are required." Gehringer v. Atl. Detroit Diesel Allison LLC, Civ. A. No. 08-3917, 2013 WL 5530213, at *6 (D.N.J. Oct. 4, 2013) (alteration in original) (citation omitted), aff'd, 595 F. App'x 157 (3d Cir. 2014). To prove bad faith, courts in the Third Circuit have held that a plaintiff must show that "the union and its representatives harbored animosity towards the employee; and . . . that animosity manifested itself as a material factor in the union's handling of the employee's grievance." Id. (quoting Morgan v. Commc'ns Workers of Am., AFL-CIO, Dist.

1, No 08-249, 2009 WL 749546, at *8 (D.N.J. Mar. 17, 2009)); accord Maskin v. United Steel Workers of Am., 136 F. Supp. 2d 375, 382 (W.D. Pa. 2000). Importantly, however, a union "has broad discretion in its decision whether and how to pursue an employee's grievance against an employer." Chauffeurs, 494 U.S. at 567-68.

Here, despite the allegations in the Amended Complaint that beginning in 2013 the Union began to treat Plaintiff "in an arbitrary and unfair manner, with animus, and treated him differently than other members of the Union in bad faith" (Doc. No. 22 ¶ 10), which are conclusory allegations, Plaintiff has failed to support his allegations with evidence in the record and thus has failed to prove breach of the duty of fair representation. See Anderson, 477 U.S. at 248 (stating that a party opposing a motion for summary judgment may not rely on mere allegations in the pleadings but must "set forth specific facts showing that there is a genuine issue for trial").

Instead, the evidence shows that in March 2013, Plaintiff was fired for pushing a coating dolly at his co-worker after the co-worker provoked him. (See Doc. No. 52-1 ¶ 4; Doc. No. 52-3 at 120:9-18.) The Union then negotiated the LCA, which restored Plaintiff to his former position but provided that he would "be terminated for his first failure to meet any" of the LCA's terms or conditions. (Doc. No. 51-3 at 2.) Notwithstanding his allegation of arbitrary and unfair treatment by the Union, Plaintiff testified in his deposition that when he would approach the Union to request that a grievance be filed, the Union would ask him questions regarding the incident, would sometimes tell him that the issue was not grievable, but would give him a grievance paper to file a grievance if he wished. (Doc. No. 51-2 at 35:3-36:22.) Plaintiff offers no evidence beyond his allegations in the pleadings of arbitrary or unfair treatment by the Union.

Then, following the April 2016 mislabeling incident, Salamone and Judon both asked Smith to offer Plaintiff another LCA, but the request was declined. (Doc. No. 51-6 at 7 ¶ 10.) Thereafter, Salamone and Viscuso represented Plaintiff at the meeting to discuss his termination. (Doc. No. 51-7 ¶ 17.) After his termination, when Plaintiff requested an update on his grievance request, Judon informed him that the International Union could not proceed any further with his grievance because it believed that it would be unable to prevail in arbitration. (Doc. No. 51-6 at 4.) In his sworn affidavit, Salamone further states that the Union concluded that it would be fruitless to grieve or arbitrate the termination because the LCA is non-grievable. (Id. at 8 ¶ 14.) Plaintiff agreed in his deposition that the Union listened to him and explained its decision not to file a grievance related to his termination. (Doc. No. 51-2 at 59:18-60:2.)

Viewing the facts in the light most favorable to Plaintiff, he has not shown that the Union's conduct was "without a rational basis or explanation," Marquez, 525 U.S. at 46, or that the Union "arbitrarily ignore[d] a meritorious grievance," Riley, 668 F.2d at 228. Instead, the evidence shows that the Union's decision was reasoned and explained to Plaintiff. The evidence shows that the Union was aware of all of the facts of Plaintiff's incident and made a judgment that even if they proceeded to arbitration, Plaintiff would not prevail. The Union represented Plaintiff at his termination meeting and was unsuccessful.

Furthermore, the evidence fails to show that the Union harbored animosity toward Plaintiff which "manifested itself as a material factor" in the handing of his grievance. See Gehringer, 2013 WL 5530213, at *6. Any acts of past hostility that Plaintiff alleged in the Amended Complaint have not been supported by evidence in the record. Because at summary judgment, the nonmoving party may not rest on mere allegations, Chambers, 587 F.3d at 193,

Plaintiff has failed to show that the Union acted arbitrarily, discriminatorily, or in bad faith in breach of its duty of fair representation.

Because Plaintiff failed to prove that the Union breached its duty of fair representation, he has failed to prove his hybrid § 301/fair representation claim. See Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993) ("In the 'hybrid' suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." (citation omitted)). Accordingly, the Court need not discuss whether Graphic Packaging breached the CBA. See Burns v. Salem Tube, Inc., 381 F. App'x 178, 181 (3d Cir. 2010) (concluding at summary judgment that the Court need not decide whether employer breached the CBA because plaintiff had not shown that the union breached its duty of fair representation and the claims against both employer and union failed); Albright v. Virtue, 89 F. App'x 769, 771 (3d Cir. 2004) (affirming summary judgment, and explaining that because the district court properly determined that the union did not breach its duty of fair representation, the Court did not have to determine whether the employer violated the CBA).

## V. CONCLUSION

For all the reasons stated above, Defendants' Motions for Summary Judgment (Doc. Nos. 51, 52) will be granted. An appropriate Order follows.